O. H. STEVENS et al., Appellants, v. JOSEPH H. LARWILL, Administrator, etc., Respondent.

Kansas City Court of Appeals, December 19, 1904.

1. **ADMINISTRATION: Revocation of Letters: Jury: Constitution.** The proceeding to revoke the letters of an administrator is equitable in its nature and the parties are not entitled to a jury either under the statute or the Constitution.

2. ————: **Partition: Jurisdiction: Will.** Under section 4383, Revised Statutes 1899, providing that no partition of lands devised by a last will shall be made contrary to the instruction of the testator, the bringing of an action in partition in the circuit court by heirs who are disinherited by the will can not oust the probate court of jurisdiction to proceed with the administration of the estate, although it may be largely real estate.

3. ————: ————: ————: **Personal Assets: Debts.** Where there are debts due by the testator and he has personal assets to be collected, the fact that the probate court has ordered into the hands of the administrator the real estate constitutes no ground for the revocation of the administrator's letters, and a partition suit in the circuit court will not oust the probate court of its jurisdiction as to personal property.

4. ————: **Grant of Letters: Citation: Will.** Where persons named in the will as executors are disqualified to act, letters of administration should be granted to the persons entitled thereto but for the will; and where such persons are non-residents and therefore disqualified, no notice is necessary and the probate court may determine ex parte to whom the letters should be granted.

5. ————: ————: **Non-Resident: Domicile.** Evidence relating to the domicile of an administrator is considered and it is held that he was a resident of the State of Missouri within the mean-

ing of the administration law, although he came to the State after the death of the testator and took up a residence with the view of becoming the administrator in this State. Authorities distinguished.

6. ——: **Officers: Domicile.** An administrator is not a public officer and is not required to reside in this State one .year next preceding his appointment, but it is sufficient if he be domiciled in the State at the time of his appointment.

7. ——: **Will: Foreign Executor.** A non-resident executor of a will is not authorized to act in this State in the collection of assets or the payment of debts of the testator.

8. ——: **Foreign Executor: Ancillary Administrator.** The fact that an estate is in process of administration in another State where the testator resided at his death will not interfere with an ancillary administration in this State, as the statute requires the domestic administrator after paying such debts in this State to transmit to the foreign executor the remainder of the estate.

9. ——: **Will: Contest: Partition: Collateral Attack.** A suit in partition can not become a contest of a will since a probated will can be only attacked in the manner prescribed in the statute and can not be assailed in a collateral proceeding.

10. ——: **Revocation of Letters: Hostility to Heirs: Evidence.** Though the evidence shows the administrator sued one of the partitioners for rent due the estate, yet, it is held not to show such hostility as to prevent a proper management and husbanding of the estate.

11. ——: ——: **Taking Charge of Real Estate: Collateral Matters.** Where the issue is whether or not the letters of administration should be revoked, the validity or invalidity of orders relating to the real estate and other collateral matters are immaterial.

12. ——: ——: **Hostility of Administrator: Evidence.** On the question of an administrator's hostility to the heirs seeking the revocation of his letters, a witness should state facts and not opinions; and in this case if the excluded evidence had been admitted, yet, it would be wholly insufficient to sustain the action.

Appeal from Jackson Circuit Court.—*Hon. James Gibson,* Judge.

AFFIRMED.

*Frank Titus* for appellants.

(1)   The court erred in refusing a trial by jury of the questions of fact in this cause mentioned in the motion for such trial by appellants and as requested by appellants at the trial.   Tinsley v. Kinney, 170 Mo. 317; Rutherford v. Williams, 42 Mo. 38; Smith v. Canning Co., 14 Mo. App. 522; New Harmony Lodge v. Railroad, — Mo. App. —, 74 S. W. 5.   (2) The petition in the suit in partition, described all the lands in Missouri owned by John C. Larwill in his lifetime, and all persons having any interest, real or fancied, in such lands, including the present administrator, Joseph H. Larwill, were defendants therein.   Upon the institution of such suit all of said lands and the increment thereof, became exclusively within the jurisdiction and control of said circuit court, and the probate court, an inferior tribunal, was wholly unauthorized by ex parte orders to turn said lands and their revenues over to a single individual, who at the time was a contestant in such prior pending partition suit.   Seibel v. Simeon, 62 Mo. 257; Railroad v. Harris, 42 Kan. 223; Trust Co. v. Street Co., 177 U. S. 61; McFarlen Co. v. Wells, 99 Mo. App. 641; Mishawka Co. v. Powell, 98 Mo. App. 530; Purdy v. Gault, 19 Mo. App. 191; McDaniel v. Lee, 37 Mo. 204; Holland v. Anderson, 38 Mo. 55; Rathbone v. Warren, 10 Johns. (N. Y.) 595; Nelson v. Hatch, 15 Ala. 501; Henderson v. Dickey, 50 Mo. 161.   (3)   No inquiry or investigation as to the qualifications of Joseph H. Larwill for managing the property was had, nor were those of the heirs of said deceased living in Kansas City, notified or cited in any way as required by section 8 of the administration act, to either appear and qualify for administrator or given any opportunity or notice whatever, to show cause against the application of Joseph H. Larwill, who had just arrived in the town, and of necessity knew nothing of the property, or the tenants, or the requirements of

either.  That such notice or citation is necessary, see: Mullanphy v. County Court, 6 Mo. 564; Torrence v. Mc-Dougald, 12 Ga. 526; Sayre v. Sayre, 48 N. J. Eq. 267; 1 Woerner on Admr. (2 Ed.), sec. 262.  There existed no good or sufficient reason for administration in this case.  McCracken v. McCaslin, 50 Mo. App. 85; Langston v. Canterbury, 173 Mo. 122.  (4)  This administrator is a State officer, his appointment by whatever authority made is a civil appointment; and the evidence showing without contradiction that he had been but a few weeks at most in this State, prior to his appointment, the same must be adjudged void.  State ex rel. v. Dillon, 90 Mo. 229; State ex rel. v. Walker, 132 Mo. 210; State ex rel. v. Bus, 135 Mo. 325; 1 Woerner on Administrators (2 Ed.), sec. 157; In re Estate of Ames, 52 Mo. 290.  (5)  Instruction 6, to the effect that the letters of administration, with the will annexed, were improperly issued by the probate court of Jackson county, states the law, and was improperly denied. The evidence of the Ohio executor, Mr. Smith and Mr. Jenner shows that the administration is pending on the estate of said John C. Larwill in Ohio, under the purported will of said deceased (abstract pages 59 and 63).  Letters *cum testamento annexo* are not applicable or proper in the case of a foreign will, under which administration exists within the government of which the alleged testator was a citizen.  Our statute nowhere justifies such letters on a foreign will.  R. S. 1899, sec. 16.  (6)  Respondent now claims that his is merely an ordinary administration, auxiliary to the chief administrator in Ohio.  This claim can not be maintained.  An ordinary administrator merely distributes the effects of the deceased according to the law of Missouri governing descent and distribution, while an administrator *cum testamento annexo,* is bound to administer under the provisions of the will alone.  1 Woerner on Admr. (2 Ed.), 533, sec. 245; Bain v. Matteson, 54 N. Y. 663; Harper v. Smith, 9 Ga. 461;

In re Eyster's Estate, 5 Watts (Pa.) 132. (7) There being substantially no debts owing by deceased in Missouri and no demand for an administration by any creditor, administration was wholly unnecessary. McCracken v. McCaslin, 50 Mo. App. 85; Langston v. Canterbury, 173 Mo. 122. (8) Section 42, R. S. 1899, enumerates among other causes requiring the removal of an administrator, that of unsuitability to execute the trust. Unsuitability includes and denotes among other meanings—hostility to one's coheirs or distributees. 1 Woerner on Admr. (2 Ed.), sec. 270; Gaston v. Hayden, 98 Mo. App. 693; Estate of Pike, 45 Wis. 391; Drews Appeals, 58 N. H. 319; May v. May, 167 U. S. 320. (9) Under such facts the law required the removal of respondent pending such litigation. R. S. 1899, sec. 13; State ex rel. v. Guinotte, 156 Mo. 513; Trust Co. v. Soderer, 171 Mo. 680. (10) The orders of the court, authorizing respondent to take possession of the lands and collect the rents, were wholly illegal. The purported will in evidence does not devise these lands or any part thereof, either directly or to anyone executor or otherwise, as trustee for others, and in nowise refers to them. Aubuchon v. Lary, 23 Mo. 99; Chambers v. Wright's Heirs, 40 Mo. 482; Thorp v. Miller, 137 Mo. 239; Estes v. Nell, 140 Mo. 654; Eneberg v. Carter, 98 Mo. 651; 11 Am. and Eng. Ency. of Law (2 Ed.), 821. (11) It was within the province alone of the circuit court, pending the contest regarding the land and the rents therefrom, which are a part thereof, to appoint a custodian as prayed in the petition in the suit in partition, wherein respondent was a party defendant, at the time of his obtaining this administration. Hagerty v. Duane, 1 Paige (N. Y.), 321; Townsend v. Sykes, 38 La. Ann. 862; Deitrich v. Deitrich, 154 Pa. St. 92; Trust Co. v. Soderer, 171 Mo. 675. (12) The action of the trial court was erroneous in sustaining the objection of respondent to witness Benjamin Hoyt, stating the tenor of the remarks made to

witness by respondent in regard to the matter of his hostility and prejudice towards his nephews, the complainants. Seyforth v. Railroad, 52 Mo. 449; Eyerman v. Sheehan, 52 Mo. 221; Greenwell v. Crow, 73 Mo. 638; Haymaker v. Adams, 61 Mo. App. 585; Taylor v. Jackson, 83 Mo. App. 649; 1 Wharton on Ev. (2 Ed.), sec. 512-514 and note thereto.

*Chas. B. Adams* and *Wash Adams* for respondent.

(1) The court properly refused to submit the issues to a jury. This proceeding is of statutory creation and is brought under section 42, Revised Statutes of 1899. R. S. 1899, sec. 285; Bray v. Thacher, 28 Mo. 132; Whaley v. Whaley, 50 Mo. 577; Ely v. Koontz, 167 Mo. 371; State v. Bockstruck, 136 Mo. 335; State ex rel. v. Vail, 53 Mo. 97; State ex rel. v. Withers, 133 Mo. 500; Marshall v. Standard, 24 Mo. App. 192; Barnard v. Milling Co., 79 Mo. App. 153. (2) The suit instituted by the petitioners in this proceeding in the circuit court of Jackson county, seeking the partition and sale of the Missouri real estate belonging to John C. Larwill at the time of his death, was in direct contravention of the last will and codicil of said Larwill. The will and codicil were executed and proved in Ohio according to the laws of Missouri, and have been duly recorded in this State. R. S. 1899, sec. 4383; ex Parte Cubbage v. Franklin, 62 Mo. 328; Sikemier v. Galvin, 124 Mo. 367; Green v. Tittman, 124 Mo. 372. (3) Appellants further complain because no citation or notice of the intended application for letters was given to them and because no inquiry was held as to the qualifications of Joseph H. Larwill to properly manage the estate. The statutes governing such appointments are sections 7, 8 and 11, Revised Statutes 1899. Woerner's American Law of Administration, sec. 243. (4) It is contended that the letters issued to respondent should be revoked

because he was and is "a non-resident of this State." The rule is well established in all jurisdictions that the motive or purpose of a change of domicile or residence, is not material. The only question is whether the change of residence is made by the party with the bona fide intention of becoming a resident of another State. Bradley v. Lowry, 122 Fed. 788; Morris v. Gilmer, 129 U. S. 328; Hall v. Schoenecke, 128 Mo. 661; State ex rel. v. Banta, 71 Mo. App. 32; Green v. Beckwith, 38 Mo. 384; Johnson v. Smith, 43 Mo. 499; Hewitt v. Weatherby, 57 Mo 499; Bank v. Cooper, 40 Mo. 169; Adams v. Abernathy, 37 Mo. 196. (5) In the case of Hathaway, 71 N. Y. 243, it is held that a referee is not a public officer within the meaning of the State constitution, prohibiting judges from exercising any power of appointment to public office. Mechem on Public Officers, sec 1. (6) The non-resident executors named in the will were not authorized to act in this State, either in collecting the debts due the estate, or in disposing of the property for the payment of debts and legacies. Emmons v. Gordon, 140 Mo. 498; Coleman v. Skinker, 56 Mo. 367; R. S. 1899, sec. 254; Spraddling v. Keeton, 15 Mo. 118. (7) It is contended that the will was being contested by petitioners and that the law required respondent's removal pending such litigation. It seems sufficient to say that a will, when once probated, can be contested only by a direct proceeding in the manner specified in sections 4622 and 4636, Revised Statutes 1899. Jourden v. Meier, 31 Mo. 40; Stowe v. Stowe, 140 Mo. 594. (8) Hostility to his coheirs is also alleged as a ground of removal against respondent. The only hostility existing between petitioners and respondent was that initiated by the former, when respondent attempted to collect the rents on the real estate, as one of the devisees under the will. (9) It is further contended that the order of the probate court authorizing respondent to take possession of the real estate in Kansas City and lease the same for a period not exceeding two years

was illegal. This order was made in pursuance of sec. 130, Revised Statutes 1899, for the payment of debts. R. S. 1899, sec. 137. The order was obtained in good faith by the administrator on the advice of his counsel, Judge Black, and is within the statutory authority of the probate court, and was not improvidently made. Watson v. Watson, 110 Mo. 165; Shumate v. Bailey, 110 Mo. 411. (10) The court properly excluded the evidence of witness Hoyt stating his conclusions and opinion as the alleged hostility of respondent against the petitioners. Kruger v. Railroad, 84 Mo. App. 366 and authorities cited.

SMITH, P. J.—This is a procedure which originated in the probate court having for its object the annulment of the letters of administration, with the will annexed, granted to defendant Joseph H. Larwill on the estate of John C. Larwill, deceased, and to remove him. It was carried by appeal to the circuit court where, on a trial *de novo*, the facts which the evidence tended to prove were, briefly stated, about as follows, viz: That John C. Larwill, a resident of the State of Ohio, died during the month of August, 1901, at his home in Ohio, leaving a large estate in Ohio, Missouri and other States. The deceased disposed of his entire estate by will and codicil executed and proved according to the laws of Missouri, naming as his executors Paul Oliver and Richmond Smith, both residents and citizens of the State of Ohio, both of whom duly qualified as such and assumed charge of the estate in Ohio. The deceased left no children or descendents of children, and no father or mother surviving him; he was survived by his widow, a resident of Ohio, and by one brother, Joseph H. Larwill, the administrator in Missouri and respondent in this proceeding; the petitioners herein, O. H. and George A. Stevens, were sons of a deceased sister of John C. Larwill. O. H. Stevens received a legacy of $1000 in the will, which he sold and

transferred to others; *that he is at present without any interest in said estate.* George A. Stevens received nothing under the will, being one of those expressly excluded from participation in the estate. At the time of his brother's death, the respondent, Joseph H. Larwill, was in the State of Montana, having only recently left his former home in the Territory of Oklahoma, where for four years he acted as postmaster of the city of Guthrie. He was then without a permanent home; while in Montana he received news of his brother's death, and went immediately to Ohio to advise with the executors of the estate about its care and management; he was advised by Mr. Smith, one of the executors, to go to Kansas City to look after the property there; Miller Stevens, who acted as the agent for deceased in caring for the Kansas City property had recently died and respondent was advised that the property needed attention. He went to Kansas City and his first act was to consult with Judge Francis M. Black, who had been the attorney for the deceased, as to the best course to pursue in the management of the estate. Judge Black advised him to declare his intention and to become a resident of Missouri, take up his residence, and thus qualify as administrator of the Missouri estate; this respondent did; he engaged lodging and board and became in good faith a resident of Kansas City, Missouri, and was appointed and qualified as administrator with the will annexed of the estate in Missouri. No citation or notice of his intended application for letters was given to petitioners or any one else. He was advised by Judge Black to procure an order from the probate court to take charge of and lease the real estate for the purpose of paying the local debts of the estate, and if necessary the local legacies. The probate court made the order and respondent took charge of the realty and collected rents therefrom for two years from the date of said order. One of the petitioners, George A. Stevens, was a tenant of one of the

houses, and refused to pay rent for more than a year after the administrator took charge; he was the only defaulting tenant. The inventory filed, showed besides the real estate, personal property to the nominal amount of four or five thousand dollars, belonging to the estate in Kansas City. Defendant has faithfully accounted for all rents and other property coming into his hands, and objection is not made to any specific act of his in the care and management of the estate. A partition suit was filed by the petitioners herein in the circuit court demanding sale of Kansas City real estate, prior to the issuance of letters to respondent; this suit is designated as a contest by counsel, and it is claimed to have resulted in giving the circuit court prior jurisdiction over the realty involved. In the trial in the circuit court the petitioners applied for a jury trial which the court refused to grant, and the case was tried and the issues determined by the court alone. The prayer of the petition was denied by the court and judgment given accordingly, from which petitioners appealed here.

1. The petitioners complain of the action of the court in refusing to submit the issues to a jury. This is a proceeding bottomed upon section 42, Revised Statutes 1899, and is equitable in its nature. It would be impracticable, if not impossible, in such a case to dispose of the issues by the verdict of a jury. The whole matter was that which primarily rested in the discretion of the probate court. Whaley v. Whaley, 50 Mo. 577; Bradley v. Woerner, 46 Mo. App. 371; McClelland v. McClelland, 42 Mo. App. 32; In re Meeker, 45 Mo. App. 186; Terry v. McGowan, 68 Mo. App. 612. The proceeding is not an action for the recovery of money only, or for specific personal property, and therefore no right to a trial by jury was given in either the probate or circuit courts. [Bray v. Thatcher, 28 Mo. 132; Whaley v. Whaley, supra.]

It is contended that this proceeding is within the

guaranty contained in section 28, article 2, of the constitution of this State, to the effect that, "the right to trial by jury as heretofore enjoyed." The right of trial by jury has been frequently construed by the appellate courts of this State as having reference solely to the status of that right as it existed at the time of the adoption of the constitution. [State v. Bockstruck, 136 Mo. 335; State ex rel. v. Vail, 53 Mo. 97; State ex rel. v. Withrow, 133 Mo. 500; Marshall v. Standard, 24 Mo. App. 192; Barnard v. Milling Co., 79 Mo. App. 153.] The section of the statute already referred to upon which this proceeding was brought is to be found substantially in its present form in the laws of 1825, section 16, p. 96, and in each succeeding revision. As authorized by that section it is entirely statutory, having no existence at common law. The right to trial by jury was never given in such cases by the statute, consequently that right has never been "heretofore enjoyed" in such procedure. It has been decided in this State that the constitutional guaranty of trial by jury has no application to cases of equitable cognizance. [Ely v. Koontz, 167 Mo. 371.] Such cases are properly triable by the court and the refusal of a demand for a jury is not error. [Long v. Long, 141 Mo. 352.] The authorities cited and relied on by the petitioners, it seems to us, are without application to a case of this kind.

2. As may be seen by reference to the numerous authorities cited by the industrious counsel for the petitioners, the general rule is everywhere established to the effect that, "when the jurisdiction of a court and the right of a plaintiff to prosecute his suit in it have once attached, that right can not be arrested and taken away by proceedings in any other court." But this rule can not with propriety be invoked and applied in a case of this kind. An examination of the will and codicil in the light of the authorities cited by counsel has led us to conclude that such will and codicil which were executed and proved in the State of Ohio according to

the laws of this State and duly recorded in the latter State, under any fair and reasonable construction of the terms and provisions thereof, it must be held that the testator's entire estate, both real and personal, wherever situate, was thereby disposed of. The statute, section 4383, provided that no partition of lands devised by any last will shall be made contrary to the instruction of the testator expressed in any such will. In ex Parte Cubbage v. Franklin, 62 Mo. 364, it was said that, "our partition law is very broad but it at least provides that partition can not be made in contravention of a will. Indeed, if the contrary was held there would be no use in our statute allowing a testator to make a will." To the same effect is Sikemeier v. Galvin, 124 Mo. 367.

Again, it appears by the express provisions of the will that one of the petitioners, George A. Stevens, was excluded from any participation in the estate and that the other, Oscar H. Stevens, was given a legacy of $1,000 which he had sold and transferred to another, and so it results that neither of the petitioners now have any interest in the said estate. It is thus made obvious that the court in which the partition suit was brought was shorn of its jurisdiction by the statute, and the want of interest in the petitioners in the subject-matter of the suit. It must therefore be apparent that the rule in respect to jurisdiction of courts already referred to is wholly inapplicable in the present case. If the suit for the partition of the lands of the testator was forbidden by the statute, as we have seen was the case, then certainly the court in which it was brought did not by reason of the bringing of it thereby acquire jurisdiction over the *res* to the exclusion of that of the probate court.

But if we are in error in this conclusion, there is still another ground upon which the judgment must be upheld. The inventory shows that the testator left personal property in Jackson county, in this State, consist-

ing of rents due at the time of his death amounting to several thousand dollars and a note due him for $500. In addition to these debts due to him there were debts due by him to Black and Owsley for something like $150. In view of these existing conditions the granting of letters to an administrator in this State to collect and preserve the testator's estate and pay his debts was entirely proper. [State ex rel. v. Moore, 18 Mo. App. 406; Green v. Tittman, 124 Mo. 372.] It may be that the debts of the testator in this jurisdiction were not sufficient in amount to authorize the probate court to order the administrator to take charge of his real estate, but however that may be, it is certain that the appointment of such administrator was warranted by the conditions under which it was made. If the order in respect to the testator's real estate was improperly made the same could have been set aside on motion for that purpose. The setting aside of this order in no way affected or annulled the grant of the letters. The latter would have been valid even though the order in respect to the real estate had been set aside. The letters were one thing and the order of the court directing the administrator to take charge of the real estate was another. The overthrow of the latter would be no ground for invoking the former.

It may be well doubted whether or not instructions have any appropriate place in a case of this kind, but if it is an action at law so far as to entitle the petitioners to a consideration of the issues by the court upon the theories propounded in the instructions requested by them, then we think, for the reasons previously stated, their number five denying jurisdiction to the probate court to grant letters of administration was rightly refused. We may add that, even if the partition suit was properly brought, and the court in which it was brought had exclusive jurisdiction of the real estate to the exclusion of that subsequently exercised by the probate court in ordering it into the charge of the administra-

tor, still, that exercised by the latter court in granting letters of administration as to the personal estate of the testator was in no way trenched upon or ousted by that exercised by the former in the partition suit. Both proceedings may accordingly be carried on in the courts where begun without the wrongful exercise of jurisdiction by either.

3. The petitioners further contend that the respondent's letters should be revoked for the reason that no citation of his intended application for such letters was given to them and no inquiry was had as to his qualifications to properly manage said estate. By reference to sections 7, 8 and 11, Revised Statutes, it will there be seen that neither one of those grounds of contention can be sustained. Section 7 provides who shall be appointed administrators in the first instance. The persons coming in the preferred class in the order therein named subject to the approval of the court, judge or clerk in vacation are entitled to letters upon application without citation. This is made clear by section 8, which provides that if none of the persons mentioned in section 7, apply for letters within 30 days after the death of the deceased, the court, or judge or clerk may issue citation to him or them on motion of any person interested, to appear and qualify for administration, and if the person or persons so cited fail to administer within the time appointed, letters may be granted to a person or persons not included in section 7. The fact that section 8 requires notice, while section 7 does not, is conclusive that no notice is necessary in case of an appointment under section 7.

The evidence shows that John C. Larwill died a resident of Ohio, leaving a wife but no children or descendents of children. His estate would, in the absence of a will, have descended to his wife and to his brothers and sisters. The wife was at the time of his death, and continued to be a non-resident of this State; she was therefore not entitled to administer; the right of ad-

ministration in Missouri devolved upon the brothers and sisters of the deceased. Section 11 provides that letters testamentary are to be granted to the persons appointed as executors in the will, but if all such persons refuse to act, or be disqualified, letters of administration shall be granted to the persons to whom administration would have been granted, if there had been no will. The executors named in the will being residents of Ohio, and non-residents of Missouri, were not qualified to act here. The respondent therefore, had a right, under the provisions of section 7, to act as administrator with the will annexed, if the court, or judge or clerk in vacation, believed that he would best manage and preserve the estate, without notice or citation to any other person or persons. Notice to the widow would have been a useless and unnecessary act, she then being a non-resident of this State and disqualified to act. In Woerner's Amer. Law of Adminis., sec. 243, the law is thus stated:

"Before any one can be appointed administrator *who is not in the preferred class,* notice must be given to those having a prior right, to appear and claim their privilege, or show cause why the applicant should not be appointed. To dispense with the citation, those having preference should renounce their claim, or signify their consent to the grant of the petitioner's request by indorsement upon the petition or some writing of record. *But no notice is necessary to the other parties in the same class with the applicant; the appointment may be made ex parte to any of those who are equally entitled.*" The statute nowhere provides for any trial or hearing to determine the qualifications of an applicant for letters of administration to properly manage the estate. The matter is left wholly within the discretion of the probate court, with the power to remove him if found to be unqualified.

It is further contended that the letters granted to respondent should be revoked because he was and is,

"a non-resident of this State." The facts as to his residence are, that up to March 15, 1901, he had been a resident of Oklahoma Territory; having closed out his business there, he made a short visit to Ohio; from thence he went to Montana with a view of locating and going into business; he decided, however, not to remain in Montana, and was on the point of returning when he received a telegram announcing the death of his brother, John C. Larwill, in Ohio. He went to Ohio to consult with the executors named in his brother's will, about the estate and there learned of the death of Miller Stevens, the agent in charge of the Kansas City real estate. Mr. Smith, one of the executors, suggested to respondent that he go to Kansas City and assume charge of the property. This suggestion was adopted and respondent came to Kansas City, October 14, 1901, and attempted to take charge of the property and collect the rents, but was prevented by the action of petitioners herein, in notifying tenants not to pay any rent to respondent. He testified that he was then without any permanent home, and he thereupon, on or about October 15, 1901, decided to become a resident of Kansas City, Missouri, and so declared his intention, engaged board and lodging, opened a bank account, and did other things evidencing his intention to become a resident here and has resided in this city and State ever since. It may be conceded that the respondent became a resident of this State for the purpose of applying for letters of administration, having, under the will, one of the largest interests in said estate. Respondent had not been residing with his family for 13 years at the time of his becoming a resident of Missouri. His wife had resided abroad with her son superintending his education, and at the time letters were granted to respondent, was residing in Baltimore, Maryland, where her son was attending college.

The rule is well established in every jurisdiction that the motive or purpose of a change of domicile or

residence, is not material. The only question is, whether the change of residence is made by the party with the bona fide intention of becoming a resident of another State. "A citizen of the United States is entitled to transfer his citizenship from one State to another by a change in domicile, whenever he desires to do so. And where there has been an actual removal with intent to make a permanent residence, and the acts of the party correspond with the purpose, the change of domicile is completed, and the law forces upon him the character of a citizen of the State where he has chosen his domicile, although he may have a wife, and declare himself a continuing citizen of the State he had left." 6 Am. and Eng. Ency. of Law (2 Ed.), 32. A change of domicile is consummated when one leaves the State where he has hitherto resided, avowing his intention not to return and enters another State intending to permanently settle there. [Bradley v. Lowry, 122 Fed. Rep. 788.] In Morris v. Gilmer, 129 U. S. 328, the court said: "We are thus brought to the question whether the plaintiff was entitled to sue in the circuit court; was he at the time of the commencement of this suit, a citizen of Tennessee? It is true as contended by defendant that a citizen of the United States can instantly transfer his citizenship from one State to another (Cooper v. Galbreath, 3 Wash. C. C. 546-554) and his right to sue in the courts of the United States is none the less because his change of domicile was induced by the purpose, whether avowed or not, of invoking for the protection of his rights, the jurisdiction of a federal court. As said by Mr. Justice Story in Briggs v. French, 2 Sum. 251-256: 'If the new citizenship is really and truly acquired, his right to sue is a legitimate, constitutional and legal consequence, not to be impeached by the motive of his removal.' "

Whether a change of residence was affected in any case depends upon the intention with which the removal from the former domicile was made. [Hall v.

Schoenecke, 128 Mo. 661.] The words inhabitant, citizen and resident mean substantially the same thing, and one is an inhabitant, resident or citizen of the place where he has his domicile or home. [State ex rel. v. Banta, 71 Mo. App. 32.] A man's residence is his home or habitation fixed at any place, without a present intention of removing therefrom. [Green v. Beckwith, 38 Mo. 384; Johnson v. Smith, 43 Mo. 499.] A husband and wife may have separate domiciles. [Hewitt v. Weatherby, 57 Mo. 276.] When a man is living separate from his wife, his domicile may be in one State, though his wife may reside in another. [Bank v. Cooper, 40 Mo. 169.] To constitute a domicile only two elements are necessary: one of the act and the other of the intention. [Adams v. Abernathy, 37 Mo. 196.]

The above authorities establish the proposition that respondent was a bona fide resident of Kansas City, Mo., at the time letters were granted to him. He has not changed his domicile, but has remained a resident of this city ever since that time. It is contended, however, that an administrator is a State officer and as such is included within the meaning of section 12, article 8, of the constitution of this State which declares that, "no person shall be elected or appointed to any office in this State, civil or military, who is not a citizen of the United States and who shall have resided in this State one year next preceding his election or appointment." An administrator belongs to the same class of officers as curators, guardians, receivers, referees, and the like, whose duties are private and concern private interests, and are in no sense of the term public. He is invested with no portion of the sovereign functions of the State to be exercised by him for the benefit of the public, and is therefore not an officer of this State within the meaning of the constitutional provision just quoted. We have been referred to no case in which it has been held that an administrator or any one of that class of subordinate officers to which he

belongs is a public officer within the meaning of the said constitutional provision. The statute—section 10, Revised Statutes—does not require that an administrator shall have resided one whole year within this State, but only prohibits the appointment of a non-resident. It has been held in New York—71 N. Y. 238—that a referee is not a public officer within the meaning of a provision of the constitution of that State prohibiting judges from exercising any power of appointment to a public office.

Mechem on Public Officers, section 1, states that, "a public office is the right, authority and duty duly created and conferred by law, by which for a given period, either fixed by law, or enduring at the pleasure of the creating power, an individual is invested with some portion of the functions of government, to be exercised by him for the benefit of the public. As here used, the word 'office' is to be distinguished from its application to such positions as are at most *quasi* public only, as the charge of an executor, administrator, or guardian, and from the offices of a private corporation." Accordingly, we do not think the respondent's letters should be revoked on the ground of non-residence of this State.

4.   The still further contention that the letters with the will annexed were improperly issued to the respondent, can not be upheld. The non-resident executors named in the will were not authorized to act in this State either in the collection of the debts due the estate of their testator or in disposing of his property for the payment of debts and legacies. [Emmons v. Gordon, 140 Mo. 498; Cabanne v. Skinker, 56 Mo. 367.] In a case where a will is left by a non-resident owning property in this State, we think the statute—section 254, Revised Statutes—requires the issue of letters testamentary with the will annexed to some person qualified to administer in this State. This conclusion is strengthened by reading that section, 254, in connection

with section 11, already referred to, which provides when an administrator with the will annexed should be appointed.

It is no objection to the grant of letters in this State, that the estate is in process of administration in Ohio, where the testator resided at the time of his death. The administration here seems to be in the nature of an ancillary administration, as the statute —sections 255 and 266—provides that the balance in the hands of the administrator after paying all debts due citizens and others in this State may be transmitted to the foreign administrator in the State or country where the deceased had his domicile. [Spraddling v. Pipkin, 15 Mo. 118.] Instruction number six we think was not a correct expression of the law applicable to the facts which the evidence conduced to prove and it was therefore properly refused.

5. The suit for partition can not be regarded as a contest of the will. The will was duly probated and can be contested only by a direct proceeding in the manner required by sections 4622 and 4636, Revised Statutes. Such a proceeding has been held to be the exclusive remedy for contesting a will once admitted to probate and that its validity can not be attacked in a collateral proceeding. [Jourden v. Meier, 31 Mo. 40; Stowe v. Stowe, 140 Mo. 594.] The beginning of the partition suit therefore afforded no ground for the removal of the respondent from the office of administrator during the pendency of that suit.

The court at the request of the petitioners gave an instruction declaring that if the respondent, "is hostile towards the petitioners being heirs at law of the deceased, that then he should be removed as administrator." The court, it seems, did not find from the evidence that the administrator was hostile to the petitioners, and so refused to order his removal on that ground. The evidence does show that the respondent did sue and recover of one of the petitioners certain

rents which were due to the estate by the latter and which he had refused to pay. Nothing is seen in this or any other fact disclosed by the evidence which would "intercept and prevent such a management and husbanding of the estate of the deceased as prudence, sound policy and the interest of the devisees and creditors required."

6. This is a proceeding, as stated at the outset, having for its object a judgment revoking and cancelling the letters of administration granted by the probate court upon the estate of the deceased. Now, if it be conceded that the order of the court authorizing the respondent, as such administrator, to take possession of the lands of the deceased and collect the rents was improper, what of it? Does that order constitute any ground for the revocation of the letters of administration? Suppose, further, that the order so made was in excess of the jurisdiction of the probate court, what has that to do with the appointment and grant of the letters of administration. Or, suppose still further, the lands sought to be partitioned was not disposed of by the will, or not needed by the administrator for the payment of debts due by the deceased in this State, or that the petitioners are heirs at law of the deceased, do any or all of these supposed facts, if found to exist, have any direct bearing on the vital issue in the case, viz.: Whether or not the letters of administration granted to respondent should be revoked and cancelled? We think not. The validity or invalidity of this order is a question entirely foreign to that which the appeal has brought before us for determination and therefore need not be further noticed.

7. During the progress of the trial the petitioners' counsel asked their witness, Hoyt, to state what the respondent said about petitioners as indicating his prejudice against them. To this question the witness answer, "I know that he did not speak very friendly." On motion of the respondent this answer was by the

court stricken out, and of this the petitioners complain. It is the well-established general rule that a witness must state facts and not opinions. [Krueger v. Railroad, 84 Mo. App. 358.] Accordingly, it would seem that when it is sought to establish the fact that one person is hostile to, or prejudiced against another, that it is proper for a witness to state what was said, or the substance of it, so that the court or jury may determine therefrom whether such hostility or prejudice exists. The answer of the witness was but the deduction or opinion of the witness, which was improper. To allow such testimony was to invade the province of the court or jury trying the case, which, of course, was not permissible. If such testimony had been, as it was not, admissible, still we do not think its exclusion would have constituted reversible error, for the reason that a merely hostile or unfriendly feeling of the administrator to the petitioners would not have been material, or of any consequence, unless of such a character as to prevent such management of the estate of the deceased by him as prudence, sound policy and the interests of heirs, devisees and creditors require, of which there is no evidence here; on the contrary, it was shown that the administration had been well and prudently conducted all the way through.

As far as we are able to discover, the record in the case is barren of any error committed by the trial court prejudicial to the substantial rights of the petitioners, and it therefore results that the judgment will be affirmed. All concur.